UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Eric Moorman, | |
| Plaintiff, | Case: _____ |
| v. | CLASS ACTION COMPLAINT |
| Apollo Interactive Holdco, Inc., | |
| Defendant. | |

**INTRODUCTION**

1.    Americans receive billions of spam text messages every year.

2.    Apollo Interactive Holdco, Inc. ("Apollo") is responsible for a significant portion of this spam.

3.    Like most Americans, Eric Moorman ("Moorman") and class members have a mobile residential telephone.

4.    Being mobile, Moorman and class members take their phones everywhere. They use their phones to receive and make important calls, to get emergency information, and to send text messages to family members and friends. They use their phones in their homes and for their personal enjoyment.

5.     But their homes, phones, and privacy have been invaded by Apollo's spam text messages.

6.     Moorman and class members have no relationship with Apollo, have no account with Apollo, have never provided any phone number to Apollo, and have never agreed for Apollo to send any type of communication.

7.     Moorman, and some class members, have tried to eliminate the harassment and invasion of privacy from unauthorized text messages by registering their phone number on the National Do Not Call Registry ("DNCR"), but even that did not work.

8.     Apollo simply blasts text messages without caring whether they had consent or whether the recipient was on the DNCR.

9.     "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

10.     Moorman brings this action for himself and for other similarly situated people to enjoin these abusive practices and for damages.

## JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction pursuant to

28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a

significant portion of the events giving rise to this lawsuit occurred in this district.

13.     This Court has supplemental jurisdiction over the state claims under

28 U.S.C § 1367.

## PARTIES

14.     Plaintiff Eric Moorman is a resident of Lake City, Florida.

15.     Defendant Apollo Interactive Holdco, Inc. is a Delaware corporation

with its principal place of business in Los Angeles County, California.

## FACTUAL ALLEGATIONS

16.     Moorman's home, phone, and privacy been invaded by Apollo's non-

emergency text messages.

17.     Moorman is the residential subscriber of the cell phone number 813-

507-6791. Moorman uses this number for personal use. Moorman uses this phone

number at home. Moorman makes and takes 100% of his personal calls on this

phone number. Moorman does not use this phone number in any business.

18.     The 813-area code is an area code assigned to telephone numbers in

Florida.

19.    Moorman registered 813-507-6791 on the DNCR to stop telephone

solicitations on October 11, 2008.

20.    Apollo has knowingly and willfully texted Moorman at least fourteen

times:

     i.    InsurancePlans: Eric, You Are Eligible To Update Your Health Plan For 2023. Explore Coverage Options Now. Call (877) 253-9768 Reply STOP to optout
     -    From 23084 on January 3, 2023

     ii.    Eric, Health Open Enrollment Is Now. Lock-In Your 2023 Health Plan By Dec 31 To Get 2023 Coverage. Call (866) 476-2051 Rply STOP to stop
     -    From 69349 on December 29, 2022

     iii.    Eric, 4 Days Left To Lock-In Your 2023 Health Plan Before December Ends. Call A Licensed Agent In FL Now: (866) 435-2305 Rply STOP to stop
     -    From 69349 on December 28, 2022

     iv.    Eric, You Are Eligible To Update Your Health Plan For 2023. Explore Coverage Options Now. Call (877) 288-6118 Rply STOP to stop
     -    From 69349 on December 21, 2022

     v.    Eric, Explore Your 2023 Health Plan Options & Enroll By End Of December To Get 2023 Coverage. Call (877) 460-3659 Now Rply STOP to stop
     -    From 69349 on December 19, 2022

     vi.    InsurancePlans: Eric, Explore Your 2023 Health Plan Options & Enroll By Dec 31 For 2023 Coverage. Call (888) 896-9151 Now Reply STOP to optout
     -    From 23084 on December 19, 2022

vii.    Notice: Eric, Final Day To Enroll In A FL Health Plan
        With Coverage Starting Jan 1. Call Now: (877) 629-0391
        Rply STOP to stop
    -   From 69349 on December 15, 2022

viii.   InsurancePlans: Eric, Final Hours To Update Your
        Health Plan For 2023 & Get Coverage Starting Jan 1.
        Call Now: (877) 323-4055 Reply STOP to optout
    -   From 23084 on December 15, 2022

ix.     Eric, You Have 3 Days Left To Find A FL Health Plan
        With Coverage Starting Jan 1. Act Now. Call (877) 631-
        2089 Rply STOP to stop
    -   From 69349 on December 12, 2022

x.      FL Residents - Less Than 2 Weeks Left To Get A 2023
        Health Plan With Coverage Starting Jan 1. Call Today:
        (866) 476-0695 Rply STOP to stop
    -   From 69349 on December 3, 2022

xi.     Eric, Only 2 Weeks Left To Enroll In A 2023 Health
        Plan With Coverage Starting Jan 1. Call Now: (866) 518-
        1304 Rply STOP to stop
    -   From 69349 on December 2, 2022

xii.    Eric, Final Days Of Medicare Annual Enrollment. Call A
        Licensed Insurance Agent In FL Now: (888) 861-0689
        Rply STOP to stop
    -   From 69349 on December 2, 2022

xiii.   Still Looking for Auto Insurance?
        Visit: Insure.co/auto63?elid=645B036J226C814D To
        Receive Car Coverage Now! Drive with Peace of Mind.
        Rply STOP to stop
    -   From 69349 on November 30, 2022

xiv.    Eric, Under 3 Weeks Left To Enroll In A Health Plan
        With Coverage Starting Jan 1. Call A Licensed Agent
        Now: (866) 331-1781 Rply STOP to stop
    -   From 69349 on November 30, 2022

5

21.    The text messages did not disclose the individual name of the sender, nor the name of the entity whose goods and services were being promoted.

22.    The text messages were sent from short codes owned and used by Apollo.

23.    Many of the text messages also contained links to websites owned and controlled by Apollo.

24.    Moorman never provided 813-507-6791 to Apollo, never had a relationship with Apollo, and never gave permission for Apollo to send any type of communication.

25.    Apollo initiated the text messages for the purpose of encouraging the purchase of insurance.

26.    Apollo initiated text messages using an automated system. This is based on the following facts:

      i.    the text messages were generic and impersonal suggesting they were sent to many people;

      ii.    Apollo withheld its identity in the text messages;

      iii.    the text messages provided mechanical opt-out instructions such as "Rply STOP to stop," which is not something an individual does but instead is something an autodialer does;

iv.    when Moorman responded to the text messages, nobody replied;

v.    the text messages came from an SMS short code which is not possible with a regular telephone;

vi.    many people have reported getting unsolicited text messages from Apollo; and

vii.    Apollo has initiated a high volume of text messages to Moorman**.**

27.    Apollo stored or produced Moorman's telephone number using a random or sequential generator. This is based on the following facts:

i.    Moorman never provided his phone number to Apollo, indicating that the number was randomly generated;

ii.    Moorman has no relationship with Apollo, has no account with Apollo, has never provided any phone number to Apollo, and has never agreed for Apollo to send any type of communication;

iii.    if Apollo had acquired Moorman's phone number in a proper way, Apollo would have disclosed Apollo's name in the text messages; and

      iv.      Moorman had his phone number for over eighteen months before receiving the first text messages from Apollo, which means Apollo was not trying to contact someone from its own customer list.

28.    Plaintiff's counsel is aware of multiple other people that have also received spam text messages from Apollo, some of whom are also represented by Moorman's counsel.

29.    On information and belief, Apollo initiates and makes tens of thousands of similar text messages to thousands of people.

30.    The unwanted spam is incredibly annoying, distracting, and frustrating to Moorman and the class members. The spam invades their substantive right to privacy, namely the right to be free from unsolicited text messages. Who keeps texting them and why? How can they get it to stop? Why are these spammers wasting their time? When the spammers hide their identity, it hinders Moorman and class members from enforcing their rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA. It makes people worry if their phones have been compromised. The spam causes Moorman and class members to avoid looking at their phones when it may be important or interrupting other activities to respond to unwanted text messages. The spam reduces their phones' storage and battery life. In short, spam invades their privacy,

diminishes the value of their phones and their enjoyment of life, and causes a nuisance, an annoyance, and an intrusion into their seclusion.

31.    Apollo has been sued at least two other times for violations of the TCPA and is therefore aware of the regulations necessary to maintain compliance with the TCPA.

32.    By initiating text messages to Moorman, Apollo has harmed Moorman and the class members in the exact way Congress sought to protect in enacting the TCPA.

## LEGAL STANDARD

33.    **Autodialed Text messages**. The TCPA prohibits text messages to cell phones using an automatic telephone dialing system ("ATDS") except for "emergency purposes" or with the "prior express consent" of the texted party. 47 C.F.R. §64.1200(a)(1). Text messages that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

34.    **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call

registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

35.     **Do Not Call Requests**. Before initiating text messages, telemarketers must have a written policy relating to an internal do-not-call list and must honor do-not-call requests within a reasonable time not to exceed 30 days. 47 C.F.R. § 64.1200(d). "Telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so." *Rules and Regulations Implementing the TCPA*, 68 Fed. Reg. 44144, 14069, ¶ 94. "This process [to honor do-not-call requests] is now largely automated." *Id.*

36.     **Text Messages Are Calls**. Both phone calls and text messages qualify as a "call." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016); *Satterfield v. Simon Schuster*, 569 F.3d 946, 952-54 (9th Cir. 2009) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Red. 14014, 14115 ¶ 165, 2003 WL 21517853).

37.     **Identification of Caller**. The TCPA requires telemarketers to disclose the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

38.     **Autodialed Text Messages.** The TCPA prohibits text messages to cell phones using an automatic telephone dialing system ("ATDS") except for

"emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. §64.1200(a)(1). Text messages that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

## CLASS ACTION ALLEGATIONS

39.    Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Moorman brings this action on behalf of himself and the following Classes of persons similarly situated in order to remedy the ongoing unlawful practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

40.    **Class Definitions**. Moorman proposes the following Classes:

> **The National DNCR Class**
> All people in the United States (1) to whom Apollo initiated more than one telephone solicitation within any twelve-month period, (2) to their residential cellular telephone number, (3) while their phone number was listed on the national Do Not Call Registry, (4) in the four years from the filing of this action through the date of class certification.

> **The ATDS Class**
> All people in the United States (1) to whom Apollo initiated one or more text messages to their cellular telephone, (2) using the same equipment or type of equipment utilized to initiate text messages to Moorman, (3) in the four years from the filing of this action through the date of class certification.

**The Failure to Identify Class**

All persons in the United States (1) to whom Apollo initiated more than one telemarketing call or text message within any twelve-month period, (2) to their residential cellular telephone number, (3) without disclosing the name of the individual initiating the text messages and the name of the entity on whose behalf the text messages were made, (4) four years from the filing of this action through the date of class certification.

41.     A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

42.     If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

43.     **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to

any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least forty members. Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

44.    **Commonality**. A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not of a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The word 'question' in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

45.    There are questions of law and fact common to the proposed Classes, including:

   i.      Did they receive text messages from Apollo?
   ii.     Were their numbers registered on the DNCR?
   iii.    Did Apollo use an ATDS?
   iv.     Did the text messages properly disclose the identity of Apollo?
   v.      Were the text messages for an emergency purpose?

46. **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, not to the specific facts from which it arose or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

47. Moorman's claims herein are typical of those of the Classes that Moorman seeks to represent. Moorman's and the Class members' claims arise from the same conduct of Apollo.

48. **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) does the representative plaintiff and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and their counsel prosecute the action vigorously on behalf of the class? Moorman is an adequate representative of the Classes because his interests are common with the interests of the Classes, and Moorman will fairly

and adequately protect the interests of the Classes by pursuing this matter. Moorman is represented by counsel competent and experienced in TCPA and class action litigation.

49. **Predominance of Common Questions**. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined on a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required.

50. **Superiority**. The final determination a court must make to certify Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class-

wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

51.     In the present suit, the questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Apollo are small because the damages in an individual action for violations of the TCPA are small. Moorman is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

52.     Managing this case as a class action should have no significant difficulties. Notice to class members can be provided by mail. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. The common answer to these questions will determine Apollo's liability. Precedent demonstrates these questions can be litigated on a class wide basis.

**FIRST CAUSE OF ACTION**
**Illegal Solicitation of Persons on the DNCR**
**(On Behalf of the DNCR Class)**

53.    Apollo violated 47 C.F.R. § 64.1200(c)(2) by initiating telephone solicitations to the residential cellular telephones of Moorman and members of the National DNCR Class while their phone numbers were on the national DNCR.

54.    Moorman and members of the National DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

55.    The Court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

56.    The Court should enjoin Apollo from initiating telephone solicitations to phone numbers on the DNCR. *Id.*

**SECOND CAUSE OF ACTION**
**Illegal Use of an ATDS**
**(On Behalf of the ATDS Class)**

57.    Apollo violated 47 C.F.R. § 64.1200(a)(1)-(2) by using an ATDS to contact Moorman and members of the ATDS Class.

58.    Moorman and members of the ATDS Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

59.    The Court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

60.    The Court should enjoin Apollo from using an ATDS to initiate text messages absent proper consent or an emergency. *Id*.

**THIRD CAUSE OF ACTION**
**Failure to Identify**
**(On Behalf of the Failure to Identify Class)**

61.    Apollo violated 47 C.F.R. § 64.1200(d)(4) by failing to disclose the name of the individual caller and the full name of Apollo on the text messages to Moorman and members of the Failure to Identify Class.

62.    Moorman and members of the Failure to Identify Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

63.    The Court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*.

64.    The court should enjoin Apollo to disclose the name of the individual caller and the name of Apollo on all telemarketing text messages. *Id*.

**RELIEF REQUESTED**

Moorman respectfully requests the Court grant the following relief against Apollo:

A.    Certification of the proposed Classes;

B.    Appointment of Moorman as class representative;

C.    Appointment of the undersigned as counsel for the Classes;

D.    An order enjoining Apollo as set forth above;

E.    An award of damages to Plaintiff and the Classes, as allowed by law; and

F.    Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the Complaint so triable.

Dated: July 10, 2023

Respectfully Submitted,

/s/ *John Kauffman*
John Kauffman
John Kauffman (SBN 538205)
LawHQ, PC
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
john.kauffman@lawhq.com

*Attorney for Plaintiff*